IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GENREIS, INC., an Iowa Corporation;<br><br>Plaintiff,<br><br>vs.<br><br>DEREK L BROWN, Individually; L&J ASSET HOLDINGS, LLC, a Delaware Limited Liability Company; and DLB CAPITAL MANAGEMENT, LLC, a Delaware Limited Liability Company;<br><br>Defendants. | **8:22CV74**<br><br>**MEMORANDUM AND ORDER** |

Defendants Derek L. Brown, L&J Asset Holdings, LLC., DLB Capital Management, LLC (collectively, "Defendants") have moved to: 1) transfer the case to the United States District Court for the District of Oregon (Filing No. 12); and, 2) stay proceedings pending arbitration under 9 U.S.C. § 3. (Filing No. 9). Defendants' motion to stay asks the court to compel mediation, and if necessary, arbitration of Plaintiff's claims against Defendants pursuant to the terms of the parties' Operating Agreement. (Filing No. 10 at CM/ECF p. 14). Plaintiff opposes the motions. For the reasons stated below, the motion to stay will be granted pending mediation, and if unsuccessful, arbitration. The motion to transfer will be denied.

BACKGROUND

Plaintiff GenReis Inc. ("GenReis") filing a two-count complaint in state court for breach of contract and fraud. (Filing No. 1-1). The complaint alleges that in 2020, Plaintiff and Defendant Brown entered into an agreement to form Bellevue Estates with the purpose of acquiring a specific property known as Paradise Lakes

Mobile Home Park ("Paradise Lakes") through a foreclosure sale. Defendant Brown executed the Bellevue Estates Operating Agreement on behalf of L&J Asset Holdings, a "member" under the agreement, and DLB Capital Management, a "manager" under the agreement. (Filing No. 1-1, Filing No. 11-2 at CM/ECF p. 21). Scott Simpson, an officer and member of GenReis, executed the Operating Agreement on behalf of Plaintiff. (Id).

Plaintiff alleged that Defendant Brown sent an email to Plaintiff referencing the Operating Agreement for Bellevue Estates, LLC, and acknowledged that after the foreclosure, the Paradise Lakes property would be transferred into the Bellevue Estates entity. Plaintiff alleges that the property was never conveyed and that although Plaintiff has performed its obligations under the agreement, Defendants have refused to make the transfer. (Filing No. 1-1 at CM/ECF pp. 5-6).

The Dispute Resolution section of the Operating Agreement provides:

"20.1 Mediation.  In the event there is any dispute between or among the Members, between the Managers (if there are only two (2) Managers), between any Member or Members and the Managers or between any Member or Members and the Company relating in any way to this Agreement, such dispute initially must be submitted to mediation.  No party to this Agreement can commence arbitration or legal action against any other party hereto without first participating in mediation, unless the other party refuses to submit to mediation and arbitration or legal action is commenced to specifically enforce this mediation provision of this Agreement.  If the parties cannot agree upon the person to act as the mediator, the U.S. Arbitration and Mediation Service in Portland, Oregon, shall select a person to act as the mediator.  The mediator's charges and expenses shall be paid by the parties in equal shares. Mediation fees and costs do not include, and each party shall be responsible for payment of, such party's attorney fees and costs in the mediation process.

"20.2   Arbitration.   Should the dispute not be resolved by mediation, such disagreement, difference or controversy shall be submitted to arbitration with the U.S. Arbitration and Mediation

> Service in Portland, Oregon, and shall use its rules of procedure, except as specifically provided hereinafter. If the disputants cannot agree upon an individual to act as the arbitrator, the U.S. Arbitration and Mediation Service in Portland, Oregon, shall select a person to act as arbitrator. If the dispute goes to arbitration, the prevailing party shall be entitled to his, her or its attorney fees and costs incurred in the arbitration process. In arbitration, the following provisions shall apply: (i) the disputants shall have the rights and obligations respecting discovery provided in the Oregon Rules of Civil Procedure, (ii) the Oregon Rules of Civil Procedure shall apply to all proceedings before the arbitrator, (iii) the arbitrator shall not have the right to diminish or expand any of the rights of the disputants arising under this Agreement (without limiting the generality of the foregoing, the arbitrator shall not have the right to substitute the arbitrator's sense of fairness or equity for the provisions of this Agreement), (iv) the arbitrator shall not have the right to award punitive or exemplary damages, (v) the arbitrator's decision shall be accompanied by the arbitrator's written opinion explaining the decision and (vi) the award of the arbitrator shall be final and non-appealable."

Filing No. 11-2 at CM/ECF pp. 19-20. (hereafter the "dispute resolution clause").

Defendants filed their first motion seeking an order compelling Plaintiff to mediate, and if necessary, arbitrate, its claims against Defendants pursuant to the terms of the Operating Agreement. Defendants' motion, titled "Motion to Stay Proceedings Pursuant to Fed. R. Civ. P. 12(b)(6) Pending Arbitration Under 9 U.S.C. § 3" (Filing No. 9), requests that the Court stay its obligation to answer or otherwise respond to Plaintiff's complaint, and also "reserve their rights as to other preliminary motions under Fed. R. Civ. P. 12(b) and 12(e)." (Filing No. 9, Filing No. 10 at CM/ECF p. 6, n. 2).

Defendants assert that mediation, and if mediation is unsuccessful, binding arbitration, is required under the Operating Agreement. However, Defendants also filed a motion to transfer the case asserting that the Operating Agreement contains a venue selection clause, and therefore this court lacks the authority to enforce the dispute resolution clause.

Plaintiff concedes that the lawsuit is between the members and/or managers of Bellevue Estates, but asserts the issues in this lawsuit are not sufficiently related to the Operating Agreement to trigger the dispute resolution clause. Plaintiff argues that if the Operating Agreement is applied in this case, the forum selection clause is unenforceable because the named dispute resolution entity does not exist. And, finally, Plaintiff argues that Defendants waived the right to mediate or arbitrate by filing a separate lawsuit related to the Paradise Lakes property.

## STANDARD OF REVIEW

Defendants' motion is titled "Motion to Stay Proceedings Pursuant to Fed. R. Civ. P. 12(b)(6) Pending Arbitration Under 9 U.S.C. § 3" (Filing No. 9). Motions to compel arbitration may be analyzed under Rule 12(b)(6) or Rule 56. (Filing No. 10 at CM/ECF p. 6, citing City of Benkelman V. Baseline Engineering Corp., 867 F.3d 875, 881 (8th Cir. 2017)). Plaintiff asserts that, applying FRCP 12(d), the motion should be treated as a motion for summary judgment under Rule 56 because matters outside of the pleadings were presented to the court.

"Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." Ashanti v. City of Golden Valley, 666 F.3d 1148 (8th Cir. 2012). Documents necessarily embraced by the pleadings include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." Id. (citing Kushner v. Beverly Enters., Inc., 317 F.3d 820 (8th Cir., 2003). Neither party questions the authenticity of the Operating Agreement filed with Defendants' motion and the Operating Agreement is repeatedly referenced in Plaintiff's

complaint. The contents of the Operating Agreement were alleged in the complaint and thus necessarily embraced by the complaint. Review under Rule 12 is appropriate.

A court can order mediation with or without the parties consent or agreement. The parties' trial rights are not impaired by mediation since they retain the right to decide the outcome of the case; they are not submitting the case for decision by an arbitrator. As with any other contract term, where the parties have entered into a contract requiring pre-trial or pre-arbitration mediation, the court can enforce the contract and order the parties to mediate.

As to the arbitration provision of the dispute resolution clause, arbitration is favored and this court's role is to engage in a limited inquiry to "determine whether there is a valid agreement to arbitrate and whether the specific dispute at issue falls within the substantive scope of that agreement." Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1085 (8th Cir. 2001). If the court so finds, Section 3 of the Federal Arbitration Act requires a stay of proceedings pending arbitration, and Section 4 empowers the court to compel the parties to proceed with arbitration. 9 U.S.C. §§ 3, 4. "The party resisting arbitration bears the burden of demonstrating the motion to compel arbitration should be denied." Green Tree Financial Corp. - Alabama v. Randolph, 531 U.S. 79, 91 (2000).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." AT & T Technologies v. Communications Workers of Am., 475 U.S. 643, 648 (1986); Volt Information Sciences v. Board of Trustees, 489 U.S. 468, 479 (1989) (stating Arbitration is "a matter of consent, not coercion," and if the parties have not "agreed to arbitrate, the courts have no authority to mandate that they do so."); see also Churchill Environmental and Indus. Equity Partners, L.P. v Ernst & Young, L.L.P.,

643 N.W.2d 333, 336 (Minn. Ct. App. 2002)(citing AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA, 242 F.3d 780, 782 (8th Cir. 2001)). When deciding whether to compel arbitration, a two-part test is applied. United Steelworkers of Am., AFL-CIO-CLC v. Duluth Clinic, Ltd., 413 F.3d 786, 787 (8th Cir. 2005) The court must first decide whether a valid agreement to arbitrate exists. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). If so, the court must then determine if the parties' dispute falls within the scope of the arbitration agreement. AT & T Technologies, 475 U.S. at 649.

The Federal Arbitration Act, as a matter of federal law, requires that any doubts concerning the scope of arbitrable issues is resolved in favor of arbitration. Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983); Teamsters Local Union No. 688 v. Industrial Wire Products, Inc., 186 F.3d 878, 881 (8th Cir. 1999) ("[W]hen an arbitration clause exists in a contract, there is a presumption of arbitrability unless it is clear that the arbitration clause is not susceptible of an interpretation that covers the dispute.").

## ANALYSIS

I.   Motion to Transfer

The Operating Agreement states "If the parties cannot agree upon the person to act as the mediator, the U.S. Arbitration and Mediation Service in Portland, Oregon, shall select a person to act as the mediator." (Filing No. 11-2 at CM/ECF p. 19). This clause does not designate the judicial forum—a court—where claims arising out of the agreement must be filed. See e.g., Cornerstone Consulting, Inc. v. Home Depot, U.S.A., Inc., No. 4:11CV0503 TCM, 2011 WL 5118784, at *1–2 (E.D. Mo. Oct. 27, 2011) (identifying the Northern District of Georgia, Atlanta Division, or the Superior Court of Cobb County, Georgia as the appropriate forum for "any action arising out of" the agreement or related thereto.)

As such, it is not a forum selection clause which requires transfer to a different federal court; i.e., the United States District Court for the District of Oregon. In the absence of a forum selection clause, this court remains authorized to consider the terms of the contract, including whether to enforce mediation and/or arbitration pursuant to the dispute resolution clause.[1]

II. Motion to Stay and Compel Mediation, and Arbitration if Necessary

A. Validity and Scope of the Operating Agreement

Neither party disputes that the Operating Agreement is valid nor do they dispute the circumstances under which the parties executed the Operating Agreement. So, in deciding whether the arbitration provisions of the dispute resolution clause apply to Plaintiff's claims, the sole remaining issue for the court's consideration is whether this dispute falls within the scope of the dispute resolution clause. See Madol v. Dan Nelson Auto. Grp., 372 F.3d 997, 1000 (8th Cir. 2004).

In opposition to Defendants' motions, Plaintiff acknowledges that "It is clear this lawsuit is between the Member and/or the Managers of Bellevue Estates." (Filing No. 18 at CM/ECF p. 11). Plaintiff asserts, however, that the contract and fraud claims in its complaint are not disputes "relating in any way" to the Operating Agreement, (Filing No. 18 at CM/ECF p. 11, citing Filing No. 11-2 at CM/ECF p. 19)), because the Operating Agreement "is silent as to the particulars of the purchase" at issue in this case. (Filing No. 18 at CM/ECF p. 12). Essentially, Plaintiff argues that because the promises related to the purchase and transfer of

---

[1] See Nat'l Indem. Co. v. Transatlantic Reinsurance Co., 13 F. Supp. 3d 992, 1001–02 (D. Neb. Mar. 31, 2014) ("This Court favors the third, majority approach, which holds that where an arbitration provision contains a forum selection clause, the only proper venue in which to compel arbitration is the venue encompassing that forum.") The court notes, however, that the Operating Agreement doesn't include a forum-selection clause similar to the clause in the referenced cases.

the Paradise Lakes property are outside of the Operating Agreement, this lawsuit cannot be "related."

The court disagrees. The dispute resolution language of the Operating Agreement specifically includes disputes between members and managers "relating in any way to this Agreement." If a dispute resolution clause is "broad, the liberal federal policy favoring arbitration agreements requires that a district court send a claim to arbitration ... as long as the underlying factual allegations simply touch matters covered by the arbitration provision." Parm v. Bluestem Brands, Inc., 898 F.3d 869, 874 (8th Cir. 2018). Arbitration clauses covering claims "arising out of" or "relating to" an agreement are considered broad. Zetor N. Am., Inc. v. Rozeboom, 861 F.3d 807, 810 (8th Cir. 2017). Although the particulars of the transfer of property are not included in the Operating Agreement, the dispute at issue is sufficiently related to the establishment and operation of Bellevue Estates to trigger the dispute resolution clause.

### B. United States Arbitration & Mediation Service

Plaintiff argues that even if the dispute resolution clause of the Operating Agreement applies to this case, it is unenforceable as written because, while an entity named "U.S. Arbitration and Mediation Service of Oregon, Inc" existed at one time, it was dissolved in 2013. (Filing No. 18 at CM/ECF p. 13). Plaintiff posits the court cannot enforce the dispute resolution clause because it cannot order mediation with a non-existent entity. Alternatively, Plaintiff argues the court cannot select a different mediator or mediation location; that doing so would be an improper judicial revision of the Operating Agreement.

Plaintiff's argument lacks merit. While Plaintiff asserts that the Operating Agreement requires mediation or arbitration before the "U.S. Arbitration and Mediation Service of Oregon, Inc.," that entity ceased operation roughly 7 years

before the Operating Agreement was signed in 2020. (emphasis added). The court will not read the language of the dispute resolution clause as void from the outset, particularly where a plain reading of the clause suggests a different meaning. Section 20.1 of the Operating Agreement states "If the parties cannot agree upon the person to act as the mediator, the U.S. Arbitration and Mediation Service in Portland, Oregon, shall select a person to act as the mediator." ([Filing No. 11-2 at CM/ECF p. 19](#), emphasis added). Applying a common sense interpretation of this language, the court finds the parties agreed that if they could not otherwise agree on a mediator, mediation would be conducted through "United States Arbitration & Mediation," an entity providing services nationwide which was in existence and operation at the time the Operating Agreement was formed, and the mediation would occur in Portland, Oregon. Defendants have provided evidence that although USA&M is headquartered in Missouri, the service is ready, willing, and able to conduct mediation or arbitration nationwide, and specifically in Portland, Oregon, facilitated by USA&M employees or by local mediators and arbitrators. ([Filing No. 24-1 at CM/ECF p. 1-2](#)).

Since the claims in Plaintiff's Complaint are related to the Operating Agreement and the dispute selection clause is capable of being enforced, the court will stay this case pending mediation, and if unsuccessful, arbitration in accordance with the terms of the Operating Agreement.

### C. Waiver of Dispute Resolution Clause and Prejudice to Plaintiff

Plaintiff further argues that Defendants have waived their right to mediate or arbitrate by filing a separate lawsuit regarding the Paradise Lakes Property. Defendant L&J Asset Holdings filed a quiet title lawsuit regarding the subject property on February 1, 2022, the same day this action was filed in the District Court for Sarpy County. ([Filing No. 19-2](#); [Filing No. 1-1](#)). Plaintiff asserts that by

filing a lawsuit related to Paradise Lakes in state court, L&J Asset Holdings acted inconsistently with their claim to arbitration under the Operating Agreement because L&J Asset Holdings knew Plaintiff had an interest in the property and Plaintiff was not named.

A party may be found to have waived its right to arbitrate if it knew it had the right to arbitrate, acted inconsistent with that right, and as a result, prejudiced the other party by these inconsistent acts. U.S. Aprons, Inc. v. R-Five, Inc., 676 F. Supp. 2d 837, 844 (D. Neb. Dec. 14, 2009), citing Lewallen v. Green Tree Servicing, L.L.C., 487 F.3d 1085, 1090 (8th Cir. 2007). Even if a party has acted inconsistent with its right to arbitrate, it has not waived the right unless its actions prejudiced the other party. Id.

Plaintiff concedes that it not prejudiced in any of the ways identified in U.S. Aprons. Rather, Plaintiff alleges it was prejudiced by "having Defendants using Plaintiff's attorney to file the quiet title lawsuit and appear in this lawsuit removing the lawsuit to federal court." (Filing No. 18 at CM/ECF p. 19). Specifically, Plaintiff claims it was prejudiced because the Croker Huck law firm's involvement in this lawsuit "robbed Plaintiff of his previously chosen counsel." (Filing No. 18 at CM/ECF p. 21). The evidence shows this assertion is inaccurate: Scott Jochim, of Croker Huck represents L&J Asset Holdings in the quiet title action and communicated with Scott Simpson, who was acting on behalf of L&J Asset Holdings. Jochim was unaware of Simpson's affiliation with GenReis and neither GenReis nor Simpson have "ever been a client of Croker Huck." (Filing No. 24-3). It appears that Simpson believes he retained Jochim and the Croker Huck law firm, but there is no evidence that Jochim or Croker Huck ever represented Plaintiff GenReis, Inc.

As to the quiet title action, the Operating Agreement requires mediation "In the event there is any dispute between or among the Members, between the Managers (if there are only two (2) Managers), between any Member or Members and the Managers or between any Member or Members and the Company relating in any way to this Agreement…" ([Filing No. 11-2 at CM/ECF p. 19](#)). Based upon the evidence presented, the quiet title action in state court involved L&J Asset Holdings but does not involve Plaintiff GenReis, and the quiet title action is not an action between or among members and managers.

Defendants provided the affidavit of counsel for L&J Asset Holdings showing the quiet title action was "filed for the sole purpose of clearing up title issues created as a result of erroneous deeds of trust and a land contract that were recorded by lenders of mobile home units against real property solely owned by L&J Asset Holdings, LLC." ([Filing No. 24-3](#)). Further, GenReis has filed a motion to intervene in the quiet title action and, in response, L&J Asset Holdings offered to "stipulate that it does not seek to foreclose any claims in this Quiet Title Case that GenReis raised in the Federal Court Case." ([Filing No. 24-3](#)).

This court is not in a position to determine whether Plaintiff should have been named as a party in the state quiet title action. However, on its face, the quiet title action is not a dispute between members and/or managers of Bellevue Estates. Therefore, it is not subject to the dispute resolution clause of the Operating Agreement. And since GenReis' claims will not be foreclosed by the quiet title action, Plaintiff has not been prejudiced by L&J's quiet title action filed in state court. Accordingly, the court cannot find that Defendants waived their right to enforce the dispute resolution clause in the Operating Agreement.

For all the foregoing reasons, this case will be stayed to allow the parties to mediate, and if mediation fails, arbitrate in accordance with the dispute resolution

clause of the Operating Agreement. See Missionary Benedictine Sisters, Inc. v. Hoffman, LLC, No. 4:11CV3180, 2012 WL 12906357, at *5 (D. Neb. Mar. 5, 2012)

IT IS ORDERED:

1) Defendants' Motion, (Filing No. 9), is granted as follows:
   a. All proceedings in this case, including any obligation to Answer or respond to Plaintiff's Complaint, are stayed pending mediation and, if mediation fails, arbitration of those claims.
   b. The parties shall submit Plaintiff's claims to mediation in accordance with the parties' Operating Agreement.
   c. If mediation is unsuccessful, the claims shall then be promptly submitted to binding arbitration in accordance with the parties' Operating Agreement.

2) Defendants' motion to transfer is denied. (Filing No. 12).

3) The parties shall file a status report regarding the status of this case every sixty (60) days from the date of this order.

Dated this 12th day of May, 2022.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge